<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **1.451 ACRES OF PERMANENT EASEMENT AND 0.460 ACRES OF TEMPORARY EASEMENT IN THE TOWNSHIP OF FRANKLIN, SOMERSET COUNTY, NEW JERSEY,** *et al.,* <br><br> Defendants. | Civil Action No. 26-18 (ZNQ) (JTQ) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon an Application for an Order of Condemnation and Immediate Possession of Easements Condemned filed by Plaintiff Transcontinental Gas Pipe Line Company, LLC ("Transcon") on January 2, 2026 (ECF No. 1) and a corresponding Order to Show Cause entered by the Court on January 12, 2026 (ECF No. 4). Transcon filed a brief in support of its Application. ("Moving Br.," ECF No. 1-4.) On February 9, 2026, Defendant Township of Franklin ("Defendant" or "Township") filed an Opposition Brief to the Order to Show Cause ("Opp.," ECF No. 10), to which Transcon subsequently filed a Reply Brief ("Reply," ECF No. 13). The Court heard oral argument on February 17, 2026. (ECF No. 15.)

1

The Court has carefully considered the parties' submissions and oral argument. For the reasons set forth below, the Court will **GRANT** Transcon's Application.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The facts in this case do not appear to be in dispute. Transcon is a limited liability company that constructs, operates, and maintains pipelines and facilities for the transportation and sale of natural gas. ("Compl.," ECF No. 1 ¶ 1.) Transcon built its first pipeline in New Jersey over sixty-five years ago and delivers over 60% of the natural gas used in the State. (*Id*. ¶ 7.) On March 27, 2017, Transcon applied to the Federal Energy Regulatory Commission ("FERC") for a Certificate of Public Convenience and Necessity ("Certificate"), which would authorize Transcon to construct, operate, and maintain the Northeast Supply Enhancement Project ("Project"). (*Id.* ¶ 8.)

The Project would provide 400,000 dekatherms per day of firm natural gas transportation capacity to Project customers, including National Grid. (*Id.* ¶ 10.) As a part of this Project, Transcon will construct a new compressor station, Compressor Station 206 ("CS 206") in the Township. (*Id.* ¶ 13.) A compressor station compresses natural gas by raising the pressure to "push" the gas through the pipeline. (*Id.* ¶ 14.)

On May 3, 2019, FERC issued a Certificate authorizing Transcon to construct, operate, and maintain the Project. (*Id.* ¶ 17.) On January 31, 2020, Transcon filed with the FERC an application for an amendment to the Certificate which would authorize Transcon to use and extend an existing Environmental Protection Agency access road to Transcon's adjacent property where CS 206 will be constructed (the "Access Road"). (*Id.* ¶ 18.) On July 16, 2020, FERC issued an order amending the Certificate so that Transcon could use the Access Road. (*Id.* ¶ 20.)

The New York State Department of Environmental Conservation and the New Jersey Department of Environmental Protection ("NJDEP"), however, denied Transcon's Clean Water

Act Section 401 applications. (*Id.* ¶ 21.) Transcon sought and received extensions from the FERC for the Project until May 3, 2024. (*Id.* ¶ 21.) On April 10, 2024, Transcon advised the FERC that it would not seek further extensions and that it would allow the Certificate to expire. (*Id.* ¶ 22.) The FERC vacated the Certificate on June 10, 2024. (*Id.* ¶ 23.)

On January 20, 2025, President Trump signed Executive Orders 14156 and 14154 directing agencies, including the FERC, to support infrastructure development for the supply of natural gas. (*Id.* ¶ 24.) At the request of the administration, Transcon filed a petition with the FERC for the expedited reissuance of the Certificate, which the FERC granted on August 28, 2025. (*Id.* ¶¶ 25, 29.)

Since 2017, Transcon has met with property owners impacted by the Project and have obtained all necessary rights, except for the Access Road easement and temporary workspace easements on property owned by Defendants Clifford Higgins and Julie Higgins (the "Higgins Property"). (*Id.* ¶ 2, 32.) The Township is the holder of a Deed of Easement which conveys the non-agricultural development rights in a portion of the Higgins Property to the Township and prohibits any development of the Higgins Property for non-agricultural purposes. (*Id.* ¶ 3.) While Transcon has reached an agreement with the Higginses, they have been unable to reach an agreement with the Township. (*Id.* ¶ 36.) Moreover, even if the Township were willing to reach an agreement, they would be prohibited from doing so because of the Deed of Easement. (*Id.* ¶ 34.)

Despite the Deed of Easement, Transcon has engaged the Township in negotiations to obtain the necessary property rights. (*Id.* ¶ 44.) Transcon retained John Gillooly of Integra Realty Resources to prepare an appraisal of the required easements to be taken on the Higgins Property. (*Id.* ¶ 45.) By letter dated August 29, 2025, Transcon offered to purchase the permanent access

3

road easement and temporary workspace easements on the Higgins Property for $37,700. (*Id.* ¶ 47.) Thereafter, Mr. Gillooly revised his appraisal to account for an expanded access road easement that would allow for the installation and maintenance of stormwater management controls and a reduction in the temporary workspace easements. (*Id.* ¶ 48.) Transcon then sent a revised offer to the Township on September 23, 2025, for $39,900. (*Id.* ¶ 49.) To date, Transcon has been unable to acquire the necessary property rights from the Township. (*Id.* ¶ 50.)

## II.     SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this matter pursuant to 15 U.S.C. § 717f(h).

## III.    DISCUSSION

Transcon argues that it is entitled to an order of condemnation pursuant to the Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h), and that the Court should issue an injunction to allow Transcon to take immediate possession of the condemned easements. The Court will address each argument below.

### A.     Order of Condemnation

Under the NGA, a natural gas company may acquire property through eminent domain if they meet three requirements: (1) that it holds a certificate of public convenience and necessity from the FERC; (2) that it was unable to acquire the right of way through negotiation with the landowner; and (3) that the amount claimed by the owner of the property exceeds $3,000. *See Transcontinental Gas Pipe Line Co., LLC v. 2.14 Acres*, 907 F.3d 725, 729 (3d Cir. 2018). "If these conditions are met, the gas company may 'acquire the [necessary right-of-way] by the exercise of the right of eminent domain in the district court." *Id.* (alterations in original); *see also Columbia Gas Transmission, LLC v. 1.092 Acres*, Civ. Nos. 15-208, 15-211, 15-213, 15-216, 15-

218, 2015 WL 389402, at *3 (D.N.J. Jan. 28, 2015) (holding that a federal district court may use its equitable powers to enter an order of condemnation pursuant to the NGA).

Transcon has met all three requirements. First, there is no dispute that the FERC issued a Certificate to Transcon, and that the scope of the Certificate includes the Higgins Property. ("Kellogg Decl." ECF No. 1-3 ¶ 25.)[1] Second, Transcon has been unable to acquire the necessary property rights from the Township. (Compl. ¶ 36.) Transcon emailed two written offers to the Township based on what they believe to be the value of the property. (*Id.* ¶¶ 47–49.) To date, the Township has not accepted either offer. (*Id.* ¶ 50.) The second element has therefore been satisfied. Third, the value of the property has been appraised at $39,900, which satisfies the third element. (*Id.* ¶ 49.) Thus, Transcon is entitled to exercise eminent domain over the specified portions of the Higgins Property, under the authority of the NGA and the FERC Certificate.

In its Opposition Brief, the Township argues that the NGA requires a party seeking an order of condemnation to comply with New Jersey substantive procedure. (Opp. at 12.) Pursuant to 15 U.S.C. § 717f(h), "[t]he practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated." 15 U.S.C. § 717f(h). The Township contends that this section of the NGA requires Transcon to comply with the New Jersey state substantive rights for state eminent domain, which requires parties to engage in bona fide negotiations before any action to condemn may proceed. (Opp. at 12–13.) According to the Township, Transcon did not engage in a bona fide negotiation, and this action should be dismissed. (*Id.* at 14.) The Township's argument is without merit.

---

[1] Stephen Kellogg is the Project Manager for the Project and has detailed knowledge of the implementation and planning for construction of the Project. (Kellogg Decl. ¶ 1–2.)

5

The NGA, "when first enacted, did countenance a wide variety of eminent domain procedures because it required district courts to conform 'as nearly as may be' with the eminent domain procedure of the state in which the property was situated." *Transcontinental Gas Pipe Line Co., LLC*, 907 F.3d at 738. However, due to the varying levels of state procedures, Federal Rule of Civil Procedure Rule 71.1 was adopted, which created a nationally uniform approach to eminent domain proceedings and superseded the state-conformity language in the NGA. *See id.* As such, Rule 71.1 governs the procedure for condemnation actions brought under the NGA, and nothing in that rule suggests that there is a good faith requirement prior to exercising eminent domain in federal court.[2] *See* Fed. R. Civ. P. 71.1.

Nevertheless, even if there was a good faith negotiation requirement, Transcon would have satisfied that obligation. Transcon hired an appraiser to value the property at issue. (Compl. ¶ 45.) That appraiser determined the value of the property by using the Sales Comparison Approach, which analyzes sales of comparable properties to estimate value. (*Id.* ¶ 46.) Transcon sent its initial offer to the Township on August 29, 2025. (*Id.* ¶ 47.) The initial appraisal was then revised to account for additional expansions on the property. (*Id.* ¶ 48.) The revised offer was then sent to the Township on September 23, 2025. (*Id.* ¶ 49.) Given that Transcon hired an appraiser who

---

[2] Some courts have held that the NGA imposes a good faith requirement prior to instituting a condemnation action. *See Transwestern Pipeline Co. v. 17.19 Acres*, 550 F.3d 770, 776 (9th Cir. 2008). To support that proposition, the Ninth Circuit relies on a case from the Western District of New York, which in turn relies on a case from the Eastern District of Louisiana, which in turn does not cite to any legal authority for the proposition that federal law requires the condemnor to have conducted good faith negotiations with landowners to acquire property. *See National Fuel Gas Supply Corp. v. 138 Acres*, 84 F. Supp. 2d 405, 416 (W.D.N.Y. 2000); *Transcontinental Gas Pipeline Corp. v. 118 Acres*, 745 F. Supp. 366, 369 (E.D. La. 1990). Rather, this Court agrees with the other courts to have decided this issue that the plain language of the NGA does not impose a good faith negotiation requirement on the condemnor. *See Maritimes & Northeast Pipeline, LLC v. Decoulos*, 146 F. App'x 495, 496 (1st Cir. 2005) (holding that the plain language of the NGA does not impose a good faith negotiation requirement prior to the filing of a condemnation action); *Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land*, 210 F.Supp.2d 1253, 1257 (D. Kan. 2002) ("The plain language of the NGA does not impose an obligation on a holder of a FERC certificate to negotiate in good faith before acquiring land by exercise of eminent domain ...."); *Guardian Pipeline, LLC v. 529.42 Acres of Land*, 210 F. Supp. 2d 971, 973 (N.D. Ill. 2002) (holding that neither the NGA nor Rule 71.1 contains a requirement that a natural gas company engage in good faith negotiations).

6

used a specific methodology to value the properties and Transcon sent two offers to the Township, the Court finds that it has engaged in a good faith negotiation with the Township. *See Alliance Pipeline L.P. v. 4.360 Acres of Land*, 746 F.3d 362, 368 (8th Cir. 2014) (finding that natural gas company engaged in good faith negotiations when it made a single offer and explained its methodology to the property owner). Having determined that Transcon is entitled to an order of condemnation, the Court will turn to whether it should issue a preliminary injunction.

### B.  INJUNCTIVE RELIEF

Transcon argues that the Court should issue a preliminary injunction to allow it to take immediate possession of the condemned easements. (Moving Br. at 24.) "In determining whether a party is entitled to a preliminary injunction, [district courts] consider four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest." *Columbia Gas Transmission, LLC v. 1.01 Acres*, 768 F.3d 300, 315 (3d Cir. 2014) (citation modified).

First, the Court has already determined that Transcon will likely succeed on the merits because it has established that it has complied with all the requirements under the NGA for an order of condemnation. *See id.* (finding that plaintiff's right of eminent domain under the NGA demonstrates, without more, compliance with the first factor); *Steckman Ridge GP, LLC v. 11.078 Acres*, Civ. Nos. 08-168, 08-169, 08-177, 08-179, 08-180, 2008 WL 4346405, at *15 (W.D. Pa. Sept. 19, 2008) (same).

With respect to the second factor, Transcon contends that it will suffer irreparable harm if it cannot obtain immediate possession of the property. Specifically, Transcon asserts that it must

clear trees by March 31, 2026, so that it can begin construction of the Access Road.  (Moving Br. at 29–30.)  The U.S. Fish & Wildlife Service and NJDEP prohibit tree clearing in this area from April 1st to September 30th due to the presence of federally and state-listed endangered species. (Kellogg Decl. ¶ 57.)  If Transcon is unable to complete the necessary tree clearing by March 31, 2026, it would be required to wait until October 1, 2026, to resume work on the Access Road.  (*Id.* ¶ 58.)  Such a delay would, in turn, prevent Transcon from timely completing construction of CS 206, which must be placed in service by November 1, 2027, and is projected to require at least thirteen months to complete.  (*Id.*)  Failure to meet the November 1, 2027 in-service deadline could place Transcon in breach of its binding contract with National Grid.  (*Id.* ¶¶ 66–67.)  Moreover, the delay could inhibit National Grid's ability to meet its projected need for natural gas.  (*Id.* ¶ 68.) Accordingly, the Court finds that Transcon would suffer irreparable harm absent an order granting immediate possession of the requested easements.  *See Columbia Gas Transmission*, 768 F.3d at 315–316 (finding that company's inability to meet project deadlines would result in irreparable harm); *Tenn. Gas. Pipeline Co. v. 0.018 Acres of Land*, Civ. No. 10-4465, 2010 WL 3883260, at *3 (D.N.J. Sept. 28, 2010) (same).  As such, the Court finds that the second factor also favors Transcon.

With respect to the third factor, the harm to the Township is minimal.  The Township argues that it would be irreparably harmed if the Project is allowed to proceed because of alleged negative impacts on the surrounding land.  (Opp. at 17.)  While the Court is not dismissive of the Township's concerns, this argument appears to be nothing more than a collateral attack on the Certificate, something the Court may not consider given the limited scope of review in condemnation proceedings brought under 15 U.S.C. § 717f(h).  *See Columbia Gas Transmission, LLC v. Temporary Easements for Properties in Somerset and Fayette Counties*, Civ. No. 16-268,

2017 WL 1284943, at *3 (W.D. Pa. April 5, 2017) (holding that "challenges to the FERC certificates must be made to the FERC itself" and that "collateral attack of a FERC certificate in the District Court" is not permissible). Indeed, the FERC specifically addressed community impacts in the Certificate and concluded that the Project will have minimal adverse impacts on the surrounding communities. (Compl. Ex. C at 25.)

In fact, the Township identifies no harm, other than the taking of the property, that will occur if the injunction is granted. (Opp. at 17.) But the Court has already determined that Transcon has the right of eminent domain, so it is certain that the requested easements will be granted. Moreover, as Transcon argues, the Court could simply order Transcon to pay into the Court an amount in excess of the estimated total value of the taking, which would address any possibility of financial harm to the Township. (Moving Br. at 32.); *see Columbia Gas Transmission, LLC*, 2015 WL 389402, at *5 (finding any harm to the landowners to be "slight at best" because the natural gas company can compensate the defendants for the taking). The third factor therefore also favors Transcon.

Finally, as to the fourth factor, Transcon asserts that the Project will expand National Grid's access to natural gas and thereby benefit the public with enhanced reliability and resiliency of service within its territory. (Moving Br. at 32.) The Township responds that the public interest will not be served because of the negative health effects on the community associated with the Project. (Opp. at 17.) As just explained, however, the Township's argument conflicts with the Certificate, which concluded that there will be "minimal adverse impacts" to the surrounding communities. (Compl. Ex. C at 25.) Given the benefits that the Project will have in providing natural gas to customers throughout the Northeast, the Court finds that the fourth factor also favors immediate possession.

9

Having concluded that a preliminary injunction order should issue, the Court turns to the final consideration under Rule 65, which is to assess an appropriate security. Rule 65 provides that "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of the security is left to the district court's discretion. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010).

Here, as set forth above, Transcon has offered to deposit a security of $39,900 (or some excess of that value deemed appropriate by this Court) into the Registry of the Court. Beyond asserting that the proffered $39,900 is inadequate, the Township has articulated no specific value it believes would be acceptable. Accordingly, given the parties' ongoing dispute over the value of the property rights at issue and to protect the Township's interests, the Court will exercise its discretion to order Transcon to deposit $60,000 as security.

## IV.    CONCLUSION

For the reasons stated above, the Court will **GRANT** Transcon's Application for an Order of Condemnation and Immediate Possession of Easements Condemned. An appropriate Order will follow. No final determination has been made regarding the amount of just compensation to which the Township is entitled.

Date: February 20, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

10